answers and claims to, the suit, each alleging that they are British subjects resident in Nova Scotia, and that the vessel and cargo are owned by them and both are British property, and neither is subject to arrest or condemnation as prize of war; and they invoke their own affidavits, appended to the proceedings and the evidence taken in preparatorio, in support of their defences.

The proofs show that the vessel and cargo were neutral property and it is not made a point of contestation by the libellants, since the proofs are in, that the voyage was honest and fair in its inception, and that neither vessel nor cargo are, upon the facts before the court, subject to confiscation; but, on the part of the United States, it is insisted that the direction of the vessel, and her apparent purpose when she was arrested, denoted an intention to enter the blockaded port, so far, at least, as to well warrant her arrest and to impose upon her the necessity of establishing the justifiableness and innocency of her proceedings. On the other side, it is urged that she deviated from the regular course of her voyage for necessary causes, and stands, on that account, exonerated from all blame and all reasonable grounds of suspicion.

The evidence given by the master, mate, and seamen of the captured vessel, on the preparatory examination, is entirely consistent and clear, that the vessel was laden and despatched at Nova Scotia, on a voyage to Key West, and was manned by a British crew and laden with a British cargo, not contraband, and that the voyage was faithfully pursued until, in its regular course, the vessel became short of water for the crew, and also of burning fluid to supply her lamps, a portion of the fluid, shipped in quantity sufficient for the purpose, being found, when at sea, defective in quality and incapable of being used as a light, so that the vessel could not be safely navigated at night. The vessel deviated from the true course of her voyage about fifteen miles, and attempted to obtain from other vessels the supply needed for her wants, and, in so doing, was seized by the United States vessel-of-war.

I perceive no reason to doubt, on all the facts and circumstances in proof, that the master of the vessel and her supercargo acted under an honest conviction that the necessities of the vessel required she should obtain the supplies lost to her in order to continue the voyage safely, and were governed in their proceedings by that motive, and not by an intent to violate the blockade of the port which she sought to enter and near which she was seized. Although the condition of the vessel relieves her from confiscation because of the effort of the master to enter a blockaded port for the purpose of relieving her necessities, yet excuses of that kind are looked upon with marked distrust by prize courts, who scan them cautiously. Lord Stowell holds that nothing but a high necessity justifies an attempt to enter a blockaded port, (The Hurtige Hane, 2 C. Rob. Adm. 124,) and that slight and plausible excuses will not be listened to, (The Fortuna, 5 C. Rob. Adm. 28,) and the want of provisions is referred to as a simulated reason often set up in excuse of the offence. Still, when the necessity is actual and is the motive which governs the conduct of the master the vessel will be exonerated from the severe penalty which the act of breaking a blockade incurs.

I think the proofs fairly make out such a case for the vessel in this instance, and that, accordingly, the vessel and cargo should be restored to the claimants; but I think there was probable cause for arresting the vessel in an attempt to make a blockaded port and sending her in to make good before the proper court the justification she alleged for her proceedings. The judgment of the court, accordingly, is that the vessel and cargo be restored to the claimants, without costs against the captors.

## Case No. 519.

### The A. R. GRAY.

[7 Ben. 483.][1]

District Court, E. D. New York. Oct., 1874.

RELEASE OF VESSEL FROM CUSTODY—PRIORITY OF CLAIM.

Where a vessel was libelled, and seized under the process, then released by the marshal from custody, upon consent of the libellant, and was subsequently libelled by other parties, condemned and sold: *Held*, that the first libellant had no claim to be first paid out of the proceeds; that the consent to release the vessel operated as a waiver of priority of claim.

In admiralty.

Geo. W. Rathburn, for Nathan.

Beebe, Wilcox & Hobbs, for Burtis.

BENEDICT, District Judge. These cases came before the court for a determination of the question of priority between the claims set forth in the libel of A. F. Nathan and others, and the claim set forth in the libel of Divine Burtis and others.

The first mentioned libel was filed on the ninth day of May, 1874, when process was issued, and the vessel was taken into custody. Subsequently by the consent of the libellants, the vessel was released by the marshal, and went about her business, in pursuance of an agreement made between the libellants and the owners of the vessel by which the earnings of the boat should be applied to the payment of the libellants' demand. On the 22d day of July, 1874, the vessel was again libelled by the libellant Burtis, and also by other libellants, to re-

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

cover for supplies, some of which had been furnished since the marshal's release of the vessel from his custody, under the process issued in the case of Nathan & Co. Upon these subsequent processes, the vessel was seized, and she had been condemned and sold under decrees entered in some of them.

Her proceeds being thus in court, the libellants Nathan & Co., now insist that they are entitled to be first paid, because their libel was the first in time; and they say, that as the marshal released the vessel from custody under the process, upon their consent simply, without an order of the court, they have lost no rights by such release. I am of the contrary opinion. It does not lie in the mouth of those who consented that the marshal release the vessel from custody, partly at least for their own benefit, now to say that the release was unauthorized. The fact is patent that the vessel was released and resumed her occupation and incurred additional liabilities, not only with the knowledge of but in pursuance of an agreement with the libellants Nathan et al. Such a release amounted to a waiver of any right of priority which might otherwise have been acquired by the filing of their libel prior to the filing of the libel of Burtis. In distributing the proceeds therefore, the order will be that the claim of Burtis be first satisfied.

A. R. GRAY, The. See Case No. 10,049.

ARGUELLES, (ALLEN v.) See Case No. 213.

ARGUELLES, (LENOX v.) See Case No. 8,244.

## Case No. 520.
### ARGUELLES v. WOOD.
[2 Cranch, C. C. 579.][1]

Circuit Court, District of Columbia. May Term, 1825.

LANDLORD AND TENANT — ORDER FOR RENT—ACCEPTANCE—ACTION—VERDICT OF JURY—AMENDMENT—ARREST OF JUDGMENT.

1. If the landlord draws an order on his tenant, on account of rent, and the tenant accepts, but does not pay it when due, and suffers himself to be sued for it by the payee, he is not entitled to set it off, under the plea of no rent arrear, in an action of the replevin, if the landlord, at the trial of the replevin, produces the order cancelled, and offers to surrender it to the tenant and to pay the costs of the suit brought upon it.

2. If the jury find the amount of the rent arrear in damages, without stating it to be the amount of the rent, the court will permit the verdict to be so amended by the clerk, after the jury have rendered their verdict and retired from the bar, and even after another cause has been tried. And upon such a verdict the court will award a retorno habendo; and will not arrest the judgment because the jury have not found the value of the distress taken.

[1][Reported by Hon. William Cranch, Chief Judge.]

At law. Replevin. Avowry for rent-plea, no rent arrear, and issue. The defendant had drawn an order on the plaintiff on account of the rent, in favor of R. Smith, for $87.50, which was accepted by the plaintiff. This was outstanding at the time of the distress, and was not credited. The amount distrained for was $175, on the 7th of August, 1823. Suit was brought by Mr. Smith against the plaintiff upon her acceptance in November, 1823. She now claims credit for this sum of $87.50, against the rent. The defendant produces the acceptance and offers to cancel and surrender it, and to pay the costs of the suit of Smith v. Arguelles.

THE COURT (MORSELL. Judge, contra) was of opinion that the plaintiff could not now receive credit for that acceptance; it being sufficient for the defendant, at this trial, to produce and cancel the acceptance.

MORSELL, Circuit Judge, was of opinion, that if the acceptance was received by Wood as payment of so much of the rent, the plaintiff was now entitled to the credit, as it was not produced and cancelled, or tendered at, or before, the time of the distress. See Chit. [Bills,] p. 130, note 1; Phil. [Ev.] (Ed. 1821;) Harris v. Johnston, 3 Cranch. [7 U. S.] 311; Sheehy v. Mandeville. 6 Cranch, [10 U. S.] 253; Clark v. Young, [1Cranch, (5 U. S.) 191,] and other cases cited in the note in Chit. [Bills,] p. 130.

The jury found their verdict for the defendant; damages $140, with interest from the 20th of July, 1824. After the verdict was taken down by the clerk, and before the jury separated, Mr. Ashton, for the defendant, suggested a doubt whether the verdict was correct, but did not then make any specific motion to amend it, and the court went into another trial, and the jurors in this case retired from the bar and separated. After the trial of the next cause, Mr. Hall and Mr. Ashton, moved for leave to amend the verdict, by stating that the $140 was the amount of the rent arrear, and

THE COURT (CRANCH, Chief Judge, doubting) permitted the amendment to be made. After the amendment was made, stating that the jury found one cent damages for defendant, that the rent arrear was $140, with interest, &c., Mr. Jones, for the defendant, moved in arrest of judgment, and contended that the verdict was not good at common law, nor under the statute of 17 Car. II. c. 7, because it has not found the value of the goods distrained; for by the statute the judgment for the defendant must not exceed the value of the distress. 2 Selw. N. P. 1144; Freeman v. Archer, 2 W. Bl. 763; Rees v. Morgan, 3 Term R. 349.

Mr. Ashton, contra. An avowry was a proceeding at common law, and if the verdict is for the defendant, the regular judgment at common law is for a writ de retorno habendo. The finding of the amount of the rent arrear, does not injure it as a common